# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **NAJVA FARSHID, on behalf of her child, E.K., a minor,** | § § § | |
| *Plaintiffs*, | § § | |
| **vs.** | § § | **Civil Action No. 4:22-cv-00821-ALM** |
| **ALLEN INDEPENDENT SCHOOL DISTRICT, through its Board of Trustees; JULIE YOUNG, in her official and individual capacity; TERREVA BRYANT, in her official and individual capacity; CRYSTAL BUNCH, in her official and individual capacity; DOUG WILHELM, in his official and individual capacity; DOE DEFENDANTS 1-20, inclusively,** | § § § § § § § § § § § § | |
| *Defendants*. | § | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) and Tex. Civ. Prac. & Rem. Code §101.106, Defendants Allen Independent School District, Julie Young in her official and individual capacity, Terreva Bryant in her official and individual capacity, and Doug Wilhelm in his official and individual capacity, file the following motion to dismiss.

### I.
### INTRODUCTION / ISSUES

1.1     Plaintiff is Najva Farshid on behalf of her daughter E.K., a minor student who attends school in the Allen Independent School District ("AISD"). Dkt. 1, ¶¶ 1-2. According to Plaintiff's Complaint, Plaintiff complains that her daughter's right to bodily integrity was violated when school officials "use[d] excessive force in the discipline of students or negligence resulting in bodily harm to students." Dkt. 1, ¶¶ 14-105. Based on the Complaint's allegations, Plaintiff asserts

a federal claim for the alleged violation of E.K.'s substantive due process rights under 42 U.S.C. §1983, and state law causes of action for (1) battery, (2) false imprisonment, (3) gross negligence, (4) intentional infliction of emotional distress, and (5) negligence. Dkt. 1, ¶¶ 54-113.

1.2     The Defendants are AISD, a Texas public school district, and its employees Julie Young (a behavior coach), Terreva Bryant (a behavior coach), Crystal Bunch (a classroom teacher), and Doug Wilhelm (a school principal). Dkt. 1, ¶¶ 3-7. Critical to this motion, Plaintiff has sued the individual school district employees in both their official and individual capacities; and, moreover, Plaintiff has sued AISD and the individual school district employees regarding the same subject matter. See Dkt. 1.

1.3     As will be detailed below, this lawsuit should be dismissed with prejudice in its entirety for the following reasons:

- First, Plaintiff's five state law claims against the individual Defendants in their individual capacities *must* be dismissed pursuant to the *irrevocable* election of remedies provisions of Tex. Civ. Prac. & Rem. Code §101.106 and, in turn, these same state law claims against AISD must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) because AISD has immunity from these claims since they do not involve the operation or use of a motor vehicle. Moreover, to the extent the above reasons don't completely foreclose consideration of additional argument, these state law claims should also be dismissed pursuant to Rule 12(b)(6) because Plaintiff has failed to allege facts sufficient to plausibly support these claims against each Defendant.

- Next, Plaintiff's Section 1983 claim should be dismissed under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) because Plaintiff has failed to first exhaust her administrative remedies as

required by the Individuals with Disabilities Education Act ("IDEA") and, as a result, the Court must dismiss Plaintiff's Section 1983 claim for lack of jurisdiction.

- Finally, Plaintiff's Section 1983 claim should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because (a) Section 1983 substantive due process claims are not available in school discipline cases as a matter of well-established law; (b) neither AISD nor the individual Defendants can be liable under Section 1983 under respondeat superior as a matter of well-established law; (c) there are no allegations of official policy or custom sufficient to allege a plausible Section 1983 claim against AISD; (d) Plaintiff's Section 1983 claim against the individual Defendants in their official capacities are duplicative of their claim against AISD; (e) Plaintiff has failed to plausibly plead each individual Defendant's individual liability under Section 1983,  and (f) the individual Defendants in their individual capacities are entitled to qualified immunity from Plaintiff's Section 1983 claim.

## II.
## DISMISSAL PURSUANT TO TEX. CIV. PRAC. & REM. CODE §101.106

### A.    Standard for Dismissal Pursuant to Texas Tort Claims Act Section 101.106

2.1    Plaintiff has brought five state common law tort claims against **both** AISD and the individual Defendants in their official and individual capacities: (1) battery, (2) false imprisonment, (3) gross negligence, (4) intentional infliction of emotional distress, and (5) negligence. Dkt. 1, ¶¶66-113. However, the election of remedies and immunity provisions of the Texas Tort Claims Act require the Court to immediately dismiss these claims.

2.2    According to the Texas Supreme Court,

> A public employee may be individually liable for his tortious conduct outside the general scope of employment, but section 101.106 of the Texas Tort Claims Act (the "Act") requires a plaintiff

to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone. If the plaintiff nevertheless sues both employer and employee, section 101.106(e) requires that the employee "immediately be dismissed" on the employer's motion. We hold that this statutory right to dismissal accrues when the motion is filed and is not impaired by later amendments to the pleadings or motion.

*Univ. of Tex. Health Sci. Ctr. v. Rios,* 542 S.W.3d 530, 532 (Tex. 2017). See also *Guangcun Huang v. Hui-Ming Haung,* 846 Fed. Appx. 224, 230 (5th Cir. 2021) ("Under Texas Civil Practice & Remedies Code §101.106(e), if a suit is filed 'against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.' Appellant sued individual Appellees for intentional torts arising from the same incidents for which he sued [the governmental unit]. The district court thus properly dismissed these claims under §101.106(e).") (quoting Tex. Civ. Prac. & Rem. Code §101.106(e)).

2.3    Importantly,

Section 101.106 requires a plaintiff to decide on a theory of tort liability before suit is even filed. A plaintiff must "decide ***at the outset*** whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." That decision is "an irrevocable election ***at the time suit is filed***" whether to "sue the governmental unit under the Tort Claims Act or proceed against the employee alone." …

We have warned that "because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually." …

As we have noted, when a plaintiff sues both a governmental unit and its employees in tort, as Rios did here, section 101.106(e) requires that "the employees shall immediately be dismissed on the filing of a motion by the governmental unit."

*Rios,* 542 S.W.3d at 536-37 (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655-57 (Tex. 2008)). See also *McLemee v. Van Zandt Cty.,* 2021 U.S. Dist. Lexis 115192, *6-7 (E.D. Tex. 2021) (dismissing individual defendants upon governmental entity's motion pursuant to §101.106(e) – "Subsection 101.106(e) is triggered upon the filing of a motion to dismiss by the government. … The individual defendants' right to dismissal of plaintiff's state-law claims against them perfected upon the county's first motion to dismiss (Doc. 8).").

**B.      The Individual Defendants Must be Dismissed Based on Plaintiff's Irrevocable Election of Remedies**

2.4      Where, like here, "a suit is filed under this chapter[1] against both a governmental unit [AISD] any of its employees [the individual Defendants], the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code §101.106(e). See cases, *supra.*

2.5      Pursuant to Tex. Civ. Prac. & Rem. Code §101.106(e), AISD asks the Court to dismiss all the state law tort claims asserted in Plaintiff's Complaint against the individual Defendants based on Plaintiff's irrevocable election of remedies.

**C.      The Claims Against AISD Must be Dismissed Because AISD has Immunity**

2.6      A Texas public school district such as AISD has immunity from suit unless waived by the Legislature. See *Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004); *Garcia,* 253 S.W.3d at 655, 660. Relevant here, the Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities. *Id.* For school districts, the Act's waiver of immunity

---

[1] Tort claims against a governmental unit (here, AISD) are brought "under this chapter" for purposes of §101.106 even when the Texas Tort Claims Act does not waive immunity for those claims. This is true even if the claims alleged are intentional torts. *Alexander v. Walker,* 435 S.W.3d 789, 792 (Tex. 2014); *Franka v. Velasquez,* 332 S.W.3d 367, 379-80 (Tex. 2011); *City of Dallas v. Groden,* 2016 Tex. App. Lexis 3523, *20-21 (Tex. App. – Dallas 2016, pet. denied) ("Accordingly, Groden's tort claims against Golbeck and Worden could have been brought against the City under the Tort Claims Act even though the Act did not waive immunity for those claims.").

is very narrow, encompassing **only** tort claims involving the use or operation of motor vehicles. *Garcia,* 253 S.W.3d at 656 (citing Tex. Civ. Prac. & Rem. Code §101.051).

2.7     Here, Plaintiff's state law tort claims do not involve the use or operation of a motor vehicle. See Dkt. 1. Accordingly, AISD's immunity has not been waived with respect to these claims, and Plaintiff's tort claims against AISD must therefore be dismissed for lack of jurisdiction – a result that is mandated notwithstanding the Court's first dismissing these same tort claims against the individual Defendants pursuant to Tex. Civ. Prac. & Rem. Code § 101.106(e) as discussed above. See, e.g., *Garcia*, 253 S.W.3d at 659 ("Having concluded that Garcia's tort claims are not excluded from section 101.106(e)'s application, we examine subsection (e)'s effect if it were applied in this case. … [I]f the ISD had obtained Dyer's dismissal from suit under subsection (e), all of Garcia's tort claims against the ISD would be barred because, as we have said, all tort theories of recovery alleged against a governmental unit are presumed to be 'under the [Tort Claims Act].'"); *Kirk v. Plano Indep. Sch. Dist.*, 2016 Tex. App. Lexis 1073, *4-5 (Tex. App. – Austin 2016, no pet.) ("Governmental immunity shields a school district from liability except to the extent immunity is waived by the [Texas Tort Claims Act], which does so only for claims involving motor vehicles. … Therefore, the trial court did not abuse its discretion in dismissing the School District's employees upon the School District's motion, see Tex. Civ. Prac. & Rem. Code § 101.106(e), or in dismissing Kirk's remaining claims against the School District for lack of jurisdiction.").

2.8     Because AISD has immunity from suit, dismissal of these state tort claims against AISD is proper pursuant to the Texas Tort Claims Act as well as Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

## III.
## DISMISSAL PURSUANT TO RULE 12(b)(1)

### A.    Standard for Dismissal Under Rule 12(b)(1)

3.1     A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Griener v. United States,* 900 F.3d 700, 703 (5th Cir. 2018). In determining the motion, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts. *Arterbury v. Odessa Separator, Inc.*, 2019 U.S. Dist. Lexis 28463, *3 (E.D. Tex. 2019); see also *Cooper v. Benavides*, 2017 U.S. Dist. Lexis 182172, *10 (E.D. Tex. 2017) ("The Court may, however, consider affidavits and other evidence outside the pleadings in resolving a motion to dismiss under Rule 12(b)(1).").

3.2     Importantly, a Rule 12(b)(1) motion to dismiss must be considered before any other challenge because "the court must find jurisdiction before determining the validity of the claim." *Arterbury*, 2019 U.S. Dist. Lexis 28463 at *3 (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)).

### B.    Facts Relevant to Rule 12(b)(1) Dismissal

3.3     E.K. was a student at Ford Middle School in 2020. Importantly, during the school year in question she met the criteria as a student with Emotional Disturbance and she demonstrated an educational need for the related service of Special Education Counseling. As a result, E.K. was given an Individualized Education Program (IEP) as required by the IDEA. See Exhibit A to Declaration of Kim McLaughlin, which is attached as Exhibit 1 hereto. As part of her IEP, E.K.

was given a Behavior Intervention Plan (BIP). See Exhibit A, pp. 12-13. Her BIP included the following:

> Ericka has difficulties controlling her frustration and anger. She has been verbally aggressive to adults and peers, by making verbal threats to physically harm peers, using profanity when speaking with authority figures at school, making rude comments towards others, and has become argumentative with staff. Her responses can also include shut down behaviors – where she will not talk or respond to school staff. Ericka has left rooms as she slammed doors in the school building and threw books across the office. …

> Ericka will use pre-taught coping strategies to reduce feelings related to anger or frustration towards school staff. This might include requesting a cooling off period when she starts to get frustrated. She can go talk with a counselor or an identified staff member, or access a pre-taught safe place for a predetermined amount of time before speaking with an adult about her behavior. …

> If teachers see her becoming upset or angry, privately ask her to leave the classroom and return to the PAS classroom. …

> Should Ericka engage in negative behaviors as identified above related to feelings of frustration or anger, the following responses should be used by all staff members to ensure consistency:

> - State the behavior expectation and tell her what you will do (e.g. "I'm going to give you five minutes and check back in with you."). Set these limits for her. Give her time to comply with your expectation.

> If she continues to be disruptive, contact the PAS classroom, the school counselor and/or campus administration for assistance. Try to remove her peer audience as much as possible. …

> For all threats of harm towards self or others, do not leave the student unattended and contact campus administration immediately.

3.4     According to the various witness statements, on October 5, 2020, E.K.'s PAS teacher, Crystal Bunch, became aware that E.K. was struggling in her 4th period science class, so Ms. Bunch went to observe her. After observing E.K., Ms. Bunch, as provided in the BIP, removed her from

class and attempted to bring her back to the PAS classroom. As they were walking back to the PAS room, E.K. stated that she wanted to meet with assistant principal Amy Sanford and proceeded to go to the office instead of the PAS room. Ms. Bunch told E.K. that she needed to go back to the PAS room with her, but E.K. refused. As Ms. Bunch was giving the directive again, behavior coaches Julie Young and Terreva Bryant intervened and told E.K. that she could go to the PAS room on her own or that they "would help her." When E.K. refused, Ms. Young and Ms. Bryant went on each side and lifted her in order to transport her back to the PAS room – E.K. became very upset, and dragged her feet on the ground on the way to the room. See Exhibits B-G to McLaughlin Declaration.

3.5     When they reached the PAS classroom, E.K. was put in the calm down room. According to Ms. Young's written statement, "[w]hen she was in the calm down room, Terreva and I stepped out of the calm room to allow her space. I said, 'we are going to step away and give you some room.' The student started yelling 'I want to call my mom.' I told the student that as soon as she calms down and we can talk about what happened then she can call your mom. The student took her phone out of her pack back [sic]. Ms. Terreva and I asked her for her phone and restated that when she was calm, she would be able to call her mom. We removed her phone and her backpack from the calm down area." However, when the behavior coaches removed her phone and backpack from the calm down area, E.K. began to push, swing at and hit Ms. Young and Ms. Bryant. See Exhibit B to McLaughlin Declaration; see also Exhibits C and D.

3.6     As a result, the behavior coaches eventually implemented a CPI Team Control Position restraint hold on E.K.; however, E.K.'s stress combined with the apparent physical exertion from the restraint caused her to vomit (because she was wearing a face mask, the vomit got on her clothes and in her hair). After E.K. vomited, both behavior coaches stepped back out of the calm

room, and Ms. Bryant got some water and paper towels to clean up E.K. At that time, school resource officer Roberto Yanez and principal Doug Wilhelm then entered the room. See Exhibits B-G to McLaughlin Declaration.

3.7    When principal Wilhelm entered the calm down room, he proceeded to try to calm E.K. down saying "you're at a 9 and I need you to come down to a 2" and telling her that she could call/talk to her mother after she calmed down. After E.K. finally calmed down (about 15 minutes later), Ms. Bunch called E.K's mother and E.K. was allowed to talk to her. E.K.'s mother then came to pick her up. Notably, neither principal Wilhelm, assistant principal Sanford, school nurse Valerie Schwegmann, nor any other school employee noticed any physical injuries to E.K. See Exhibits B-G to McLaughlin Declaration.

## C.    Plaintiff Failed to First Exhaust her Administrative Remedies Under IDEA, Therefore the Court Must Dismiss Plaintiff's Section 1983 Claim

3.8    As a result of the above-described calm room incident, E.K.'s mother filed this suit asking for money damages under 42 U.S.C. §1983 and Texas common law for E.K.'s, a special education student, alleged injuries suffered when the Defendants "forcefully grabbed her by the arms and lifted her off the ground"; "wrestled E.K. to the ground to take her phone away"; "pushed E.K. against the wall, pulled her arms back, and held knee to her back"; "pinned E.K. face-down to the ground with her arms pulled back"; "[not] ensuring the safety of the child"; and "refus[ing] E.K.'s request to contact her mother." Dkt. 1, ¶61 (a-g).

3.9    As stated above, E.K. is a special education student, meaning that she enjoys the protections of the Individuals with Disabilities Education Act ("IDEA"). "The IDEA is meant to ensure children with disabilities receive needed special education services. See 20 U.S.C. §1400. It offers federal funds to states in exchange for their commitment to furnish a 'free appropriate public education' ("FAPE") to all children with certain physical and intellectual disabilities." *T.B.*

*v. Northwest Indep. Sch. Dist.,* 980 F.3d 1047, 1051 (5th Cir. 2020). "A free appropriate public education under the IDEA includes 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Logan v. Morris Jeff Cnty. Sch.,* 2021 U.S. App. Lexis 29254, *5 (5th Cir. 2021); see also *W.S. v. Dallas Indep. Sch. Dist.,* 2022 U.S. App. Lexis 28097, *4 (5th Cir. 2022) ("A FAPE includes both special education instruction and 'related services,' such as necessary 'support services.'"). Under the IDEA, "[school districts] document a disabled student's individual needs and services in an IEP, which 'serves as the "primary vehicle" for providing each child with the promised FAPE.'" *W.S.,* 2022 U.S. App. Lexis 28097 at *4 (quoting *Fry v. Napoleon Cnty. Sch.,* 137 S.Ct. 743, 749 (2017)). Here, E.K. had an IEP (Exhibit A to McLaughlin Declaration) and, as part of her IEP, a BIP tailored to her specific emotional needs.

3.10    Under the IDEA, a plaintiff "may file suit for relief afforded by laws other than the IDEA. However, if suit could be brought under the IDEA, then the administrative remedies provided by the IDEA must be exhausted prior to any action being filed in court." *Doe v. East Baton Rouge Parish Sch. Bd.,* 1997 U.S. Dist. Lexis 42166, *1 (5th Cir. 1997).[2] "The exhaustion requirement is not limited to claims brought under the IDEA. Although the IDEA does not foreclose remedies under the Constitution or other laws, it does require 'before the filing of a civil action under such laws seeking relief that is also available under the IDEA, the procedures under the IDEA's administrative review provisions shall be exhausted to the same extent as would be required had the action been brough under the IDEA." *Hooker v. Dallas Indep. Sch. Dist.,* 2010 U.S. Dist. Lexis 108886, *18 (N.D. Tex. 2010) (quoting 20 U.S.C. §1415(l)). Critically, the IDEA's exhaustion

---

[2] In Texas, administrative remedies under the IDEA are exhausted by filing a complaint with the Texas Education Agency. See 20 U.S.C. §1415(f)(1)(A); 19 Tex. Admin. Code §89.1151(b) (implementing one-tier review system under IDEA).

requirement applies to plaintiffs who seek damages. *McMillen v. New Caney Indep. Sch. Dist.,* 939 F.3d 640, 647 (5th Cir. 2019) (noting that "[m]ost circuits hold that the IDEA requires plaintiffs who were denied a free appropriate public education to exhaust regardless of the remedy they seek"); see also, e.g., *Doe,* 1997 U.S. App. Lexis 42166 at *1-2 (dismissing plaintiff's claim for monetary damages under Section 1983 because suit could have been first brought under the IDEA, thereby requiring exhaustion of administrative remedies); *Logan,* 2021 U.S. App. Lexis 29254 at *7-8 (affirming dismissed of claim seeking damages for emotional distress because plaintiff's complaint was "subject to the IDEA's exhaustion requirement").

3.11    Relevant to the present case, "[a] plaintiff cannot escape [IDEA's exhaustion] requirement merely by bringing suit under a statute other than the IDEA," such as Section 1983. *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.,* 390 F.Supp.3d 822, 833 (S.D. Tex. 2019) (quoting *Fry,* 137 S. Ct. at 754). See also, e.g., *D.A. v. Houston Indep. Sch. Dist.,* 629 F.3d 450, 456 (5th Cir. 2010) ("D.A. cannot assert an IDEA claim thru §1983."); *Doe,* 1997 U.S. App. Lexis 42166 at *1-2 (dismissing Section 1983 claim because suit could have been brought under the IDEA). Thus, "[i]n determining whether a plaintiff seeks relief available under the IDEA, we focus on the substance of the complaint, rather than the 'labels and conclusions' the plaintiff uses." *McMillen,* 939 F.3d at 645; see also *T.B.,* 980 F.3d at 1052 ("However, a court cannot simply look for the use or non-use of particular words or labels to determine whether a plaintiff's complaint seeks relief for the denial of a FAPE. 'What matters is the crux – or in legal-speak, the gravamen – of the plaintiff's complaint, setting aside any attempts at artful pleading.'") (quoting *Fry,* 137 S.Ct. at 755).[3]

---

[3] The Fifth Circuit has declined to decide whether the IDEA's exhaustion requirement applies to state law claims in addition to federal law (such as Section 1983) claims. *Logan*, 2021 U.S. App. Lexis 29254 at *6 n. 2.

3.12    Here, the substance (i.e., gravamen) of Plaintiff's complaint is that the Defendants misapplied and violated E.K.'s BIP (which was part of her IEP created by her special education ARD Committee) when E.K. was taken to the calm room and physically restrained. In other words, Plaintiff needed to first exhaust her administrative remedies under the IDEA with the Texas Education Agency complaining about this incident before bringing her Section 1983 in this Court. Thus, because Plaintiff failed to first exhaust her administrative remedies under the IDEA, her Section 1983 claim should be dismissed pursuant to Rule 12(b)(1) and/or 12(b)(6).[4]

## IV.
## DISMISSAL PURSUANT TO RULE 12(b)(6)

### A.    Standard for Dismissal Under Rule 12(b)(6)

4.1    A court has authority under Fed. R. Civ. P. 12(b)(6) to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint does not provide fair notice of the claim and does not state factual allegations showing that the right to relief is plausible. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007). A complaint that provides only labels and conclusions or a formulaic recitation of the elements is insufficient to show grounds for the plaintiff to be entitled to relief. *Id*. A Rule 12(b)(6) "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief..." *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (citations omitted).

4.2    While detailed factual allegations are not required, plaintiffs must allege *facts* sufficient to "nudge [ ] their claims across the line from conceivable to plausible...." *Twombly*, 550 U.S. at 570.

---

[4] "As a preliminary matter, we have not yet decided whether a failure to exhaust under IDEA deprives courts of subject matter jurisdiction… We can avoid the issue again. Because the school has raised failure to exhaust as a defense, there is no practical difference in whether we treat the issue as jurisdictional under Rule 12(b)(1) like the district court did, or instead treat exhaustion as an element of the plaintiff's claim under Rule 12(b)(6)." *Logan,* 2021 U.S. App. Lexis 29254 at *3-4 (citing *T.B.,* 980 F.3d at 1050 n.2).

Stated another way, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level"; "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Id*. at 555; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

4.3     After *Twombly* and *Iqbal*, "it is now abundantly clear that identifying only what law forms the basis of the complaint, without pleading facts indicating *how* a defendant violated that law, proves only a theoretical possibility that a cause of action *could* be stated against the defendant, not that plaintiff *did* state a cause of action." *Escuadra v. Geovera Specialty Ins. Co.*, 739 F.Supp.2d 967, 979 (E.D. Tex. 2010).

4.4     Additionally, relevant here, in analyzing a plaintiff's claims, when a successful affirmative defense (such as immunity or exhaustion of remedies) appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate. *United States ex rel. Long v. GSDMIdea City, L.L.C.,* 798 F.3d 265, 274 (5th Cir. 2015)*;Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Coffelt v. Davis*, 2016 U.S. Dist. Lexis 171904, *4-5, 11-12 (N.D. Tex. 2016).

## B.     Section 1983 Substantive Due Process Claims are not Available in School Discipline Cases, Thereby Requiring Dismissal of This Claim

4.5     Plaintiff's first cause of action is pursuant to 42 U.S.C. §1983 for the Defendants' alleged violation of E.K.'s substantive due process rights, specifically E.K.'s right to bodily integrity. Dkt. 1, ¶¶ 54-65. Underlying this claim is Plaintiff's contention that "school district employees can be held liable in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily harm to students." See Dkt. 1, ¶¶ 67, 74, 82, 98, 107.

4.6     Plaintiff, however, "cannot meet the initial requirement for stating a §1983 claim" against the Defendants because "under [Fifth Circuit] precedent the conduct of which [she] complain[s] is

not a constitutional violation. We have held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment,[5] whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage." *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874-76 (5th Cir. 2000) (dismissing Section 1983 due process claim because Texas has adequate available state remedies for excessive student discipline). The Fifth Circuit's opinion in *T.O. v. Fort Bend Indep. Sch. Dist.,* 2 F.4th 407, 415 (5th Cir. 2021), which involved allegations analogous to E.K.'s allegations in the present case, is particularly instructive:

> Fidelity to our precedent requires us to affirm the dismissal of the instant claim of substantive due process. The aide removed T.O. from his classroom for disrupting class, and Abbott used force only after T.O. pushed and hit her. Even if Abbott's intervention were ill-advised and her reaction inappropriate, we cannot say that it did not occur in a disciplinary context. … To borrow from the unpublished opinion in *Marquez[6],* in which this court dismissed §1983 claims brought by an autistic seven-year-old whose aide yelled at, grabbed, shoved, and kicked that student for sliding a compact disk across a desk, "the setting is pedagogical, and [T.O.'s] action was unwarranted." Furthermore, we have consistently held that Texas law provides adequate, alternative remedies in the form of both criminal and civil liability for school employees whose use of excessive disciplinary force results in injury to students in T.O.'s situation.

See also *J.W. v. Paley,* 860 Fed. Appx. 926, 928 (5th Cir. 2021) ("We start with an issue on which our law is quite clear even if it is at odds with the law of other circuits: students cannot assert substantive due process claims against school officials based on disciplinary actions.");

---

[5] "Corporal punishment" is described as "force that a teacher 'reasonably believes to be necessary for a child's proper control, training, or education.'" *Flores v. Sch. Bd.,*116 Fed. Appx. 504, 510 (5th Cir. 2004) (quoting *Ingraham v. Wright,* 430 U.S. 651, 661 (1997)). Similarly, "'[d]iscipline' in the school context ordinarily describes some form of punishment." *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex. 1987). "In student discipline, force is sometimes applied in the punishment, i.e., corporeal punishment." *Diggs v. Bales*, 667 S.W.2d 916, 918 9Tex. App. – Dallas 1984, writ ref'd n.r.e.).

[6] *Marquez v. Garnett,* 567 Fed. Appx. 214 (5th Cir. 2014).

---

*Washington ex rel. J.W. v. Katy Indep. Sch. Dist.,* 390 F.Supp.3d 822, 844 (S.D. Tex. 2019) ("However, a student may not bring a substantive due process claim for corporal punishment intended to discipline the student, even if the punishment was excessive, because Texas provides adequate administrative remedies.").

4.7     Accordingly, because this is a school discipline case, well-established Fifth Circuit precedent requires that Plaintiff's Section 1983 substantive due process claim must be dismissed pursuant to Rule 12(b)(6).

## C.     Defendants Cannot be Liable Under Section 1983 Under Respondeat Superior

4.8     Plaintiff's Complaint alleges that "[u]nder Federal and Texas law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer." Dkt. 1, ¶51; see also ¶65 ("Defendant AISD as a public school district is vicariously responsible for actions of employees acting within the scope of their employment"). This, however, misstates the law regarding liability for claims made under 42 U.S.C. §1983. Rather, ***"[r]espondeat superior or vicarious liability will not attach under §1983."*** *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). See also *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 330 F.3d 681, 689 (5th Cir. 2003) ("Section 1983 does not create vicarious or respondeat superior liability."); *Estate of Davis v. City of N. Richland Hills,* 406 F.3d 375, 380 (5th Cir. 2005) ("Supervisory officials cannot be held liable under section 1983 for the actions of subordinates, such as Hill, on any theory of vicarious or respondeat superior liability."). Accordingly, any and all Section 1983 claims based on respondeat superior or vicarious liability must be dismissed pursuant to Rule 12(b)(6).

**D.      There are no Allegations of an Official Policy or Custom Sufficient to Create Liability Under Section 1983, Thereby Requiring Dismissal of This Claim Against AISD**

4.9      As stated above, Plaintiff's first cause of action is under 42 U.S.C. §1983 for the alleged violation of E.K.'s right of bodily integrity. See Dkt. 1, ¶¶54-65. Assuming, *arguendo*, that this claim somehow survives dismissal notwithstanding the reasons for dismissal set forth above, this claim must nevertheless still be dismissed because the factual allegations in the Complaint are insufficient to state a plausible Section 1983 claim against AISD.

4.10     As a governmental entity, AISD "'cannot be held liable under §1983 on a respondeat superior theory,' but can be liable if 'action pursuant to official [school district] policy of some nature caused a constitutional tort.'" *Clark v. Thompson,* 850 Fed. Appx. 203, 207 (5th Cir. 2021) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Thus, "to withstand dismissal of a §1983 [*Monell*] liability claim, 'a plaintiff must identify (1) an official policy (or custom), of which (2) a policymaker[7] can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Thompson v. Gainesville Hous. Auth.,* 2022 U.S. Dist. Lexis 167921, *13 (E.D. Tex. 2022) (quoting *Hutcheson v. Dallas Cnty.,* 994 F.3d 477, 482 (5th Cir. 2021)). "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." *Id.* (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001)).

4.11     In turn, "[a] pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents [school district] policy. Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct

---

[7] In Texas, the final policymaker for public school districts is the board of trustees. See *Doe v. Edgewood Indep. Sch. Dist.,* 964 F.3d 351, 365 (5th Cir. 2020).

is the expected, accepted practice of [school district] employees. It is thus clear that a plaintiff must demonstrate a pattern of abuses that transcends the error made in a single case. A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth,* 588 F.3d 838, 850-51 (5th Cir. 2009) (internal quotation marks and citations omitted). "A pattern also requires sufficiently numerous prior incidents, as opposed to isolated incidents." *Id.* at 851. Thus, for example, the Fifth Circuit has held that "the 27 complaints upon which [plaintiff] relies were insufficient to establish a pattern." *Id.* (citing *Pineda v. City of Houston,* 291 F.3d 325 (5th Cir. 2002) (holding eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry)).

4.12    Critically, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande Valley,* 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997)). Thus, "to [plausibly] plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Id.*

4.13    Here, the Complaint pleads absolutely no facts of an official policy or custom of AISD that was the moving force of the alleged violation of E.K.'s constitutional rights. See Dkt. 1. Accordingly, Plaintiff cannot proceed beyond this case's pleading stage on her Section 1983 claim against AISD, which should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

**E.    Plaintiff's Official Capacity Section 1983 Claims Should be Dismissed as Duplicative**

4.14    Plaintiff has sued both AISD and the individual Defendants in their official capacities under Section 1983. See Dkt. 1, ¶¶54-65. However, a plaintiff's claims against a government official in his or her official capacity should be dismissed under Rule 12(b)(6) as redundant/duplicative

where, like here, the plaintiff is also suing the governmental entity under the same set of facts. This is because "a plaintiff's suit against a government official in his official capacity is 'only another way of pleading an action against an entity of which the official is an agent.'" *Thompson,* 2022 U.S. Dist. Lexis 167921 at *10-11 (quoting and citing cases).

**F.      Plaintiff has Failed to Plausibly Plead Each Individual Defendant's Section 1983 Liability, Thereby Requiring Dismissal of This Claim as to Each Individual Defendant**

4.15     In addition, Plaintiff has also sued the individual Defendants in their individual capacities under Section 1983. See Dkt. 1, ¶¶54-65. Assuming, *arguendo*, that this claim somehow survives dismissal notwithstanding the reasons for dismissal set forth above, this claim must nevertheless still be dismissed because the factual allegations in the Complaint are insufficient to state a plausible Section 1983 claim against the individual Defendants.

4.16     Although Section 1983 does apply to individuals, "we must be keenly aware of what § 1983 requires before plaintiffs can seek relief from individuals – namely individual causation. In a § 1983 claim, the Supreme Court has told us that 'a plaintiff must plead that each Government-official defendant, through *the official's own individual actions*, has violated the Constitution.'" *Jones v. Hosemann*, 812 Fed. Appx. 235, 238 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Thus, … a § 1983 plaintiff must additionally plead and prove which actions of the *individual defendant* caused the harm." *Id*. at 239.  See also *Guerra v. City of Pleasanton*, 2020 U.S. Dist. Lexis 219994, *9 (W.D. Tex. 2020) ("But for Plaintiff to succeed on her claims against the individual Defendants, she must identify the specific acts of each individual because she must demonstrate individual causation. 'The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.'") (quoting *Hosemann*, 812 Fed. Appx. at 239).

4.17     Here, the specific act(s) of *each* individual Defendant identified in the Complaint did not cause E.K. any constitutional harm. See Dkt. 1, ¶61(a-h). For example, the Complaint's allegation that "Defendant Wilhelm [] refused E.K.'s request to contact her mother" (¶61(g)) is not a constitutional violation subjecting Mr. Wilhelm to individual Section 1983 liability. In addition to this example, none of the other individual Defendants' actions pled by Plaintiff violated the Constitution; accordingly, dismissal of Plaintiff's Section 1983 claim against each individual Defendant is warranted pursuant to Rule 12 (b)(6).

## G.     The Individual Defendants Each Have Qualified Immunity, Thereby Requiring Dismissal of Plaintiff's Section 1983 Claim Against Each Individual Defendant

4.18     Next, the individual Defendants, to the extent they are being sued in their individual capacities under Section 1983, are protected by qualified immunity. Qualified immunity protects officials from suit and liability unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender,* 565 U.S. 535, 547 (2012). "It likewise shields an officer from suit when the officer makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances the officer confronted." *Kokesh v. Curlee,* 14 F.4th 382, 392-93 (5th Cir. 2021). When a defendant asserts qualified immunity, the burden then shifts to the plaintiff to rebut this defense. *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir. 1982).

4.19     "It must be emphasized that qualified immunity is an ***immunity from suit***, and extends beyond just a defense to liability to include all aspects of civil litigation." *Jacquez v. Procunier,* 801 F.2d 789, 791 (5th Cir. 1986). For this reason, the Supreme Court has emphasized that qualified immunity questions should be resolved "at the earliest possible stage in litigation." See

*Pearson v. Callahan,* 555 U.S. 223, 231-32 (2009); *Carwell v. Camp,* 2022 U.S. App. Lexis 16901, *11 (5th Cir. 2022) ("qualified immunity must be adjudicated at the earliest possible opportunity," citing *Pearson*).

4.20    Qualified immunity involves a two-prong analysis: (1) whether a statutory or constitutional right was violated on the facts alleged, and (2) whether the defendant's actions violated clearly established statutory or constitutional rights which a reasonable person would have known. *Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2004). Regarding this second prong, "[i]f the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable'[8] in light of 'law which was clearly established at the time of the disputed action.'" *Brown,* 623 F.3d at 253. Courts "ha[ve] discretion to perform either prong first." *Vincent v. City of Sulphur,* 805 F.2d 543, 547 (5th Cir. 2015).

4.21    The Fifth Circuit has frequently described the correct method for analyzing the second prong of qualified immunity, stating that a court must not deny the protection of qualified immunity unless existing precedent places the constitutional question ***"beyond debate."*** *Vincent,* 805 F.3d at 547 (citing *Morgan v. Swanson,* 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). "The court must 'ask whether the law so clearly and unambiguously prohibited [the official's] conduct that ***every*** reasonable official would understand that what he is doing violates [the law]." *Id.* See also *McLin v. Ard,* 866 F.3d 682, 695-96 (5th Cir. 2017) (same). In *Vincent,* the Fifth Circuit went on to state:

> Although a case *directly* on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. [omitting cite] Abstract or general statements of legal

---

[8] "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

> principle untethered to analogous or near-analogous facts are not
> sufficient to establish a right 'clearly' in a given context, rather, the
> inquiry must focus on whether a right is clearly established as to the
> specific facts of the case. See *Brosseau v. Haugen*, 543 U.S. 194,
> 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Therefore, we must
> decide whether the cases cited by the district court placed beyond
> reasonable debate the proposition that…

*Vincent*, 805 F.3d at 547.

4.22     The Fifth Circuit has recently demonstrated its clear commitment to this "particularized"

requirement of "clearly established." See, e.g., *Cope v. Cogdill,* 3 F.4th 198, 204 and n. 4 (5th Cir.

2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous

Supreme Court precedents. … Therefore, unless existing precedent 'squarely governs' the conduct

at issue, an official will be entitled to qualified immunity."; "[W]e must enforce the heightened

requirements that the Supreme Court has set forth in its recent qualified immunity decisions.")

(citing *White v. Pauly,* 137 S.Ct. 548 (2017); *Mullenix v. Luna,* 577 U.S. 7 (2015); *Brosseau v.*

*Haugen,* 543 U.S. 194 (2004)); *Morrow v. Meachum,* 917 F.3d 870, 874-75 (5th Cir. 2019) ("First,

we must frame the constitutional question with specificity and granularity. For example, it is

obviously beyond debate the Fourth Amendment prohibits certain 'unreasonable…seizures.' 'Yet

that is not enough.'") (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)); *Garcia v. Blevins*, 957

F.3d 596, 600-01 (5th Cir. 2020) ("We cannot 'define clearly established law at a high level of

generality.' Rather, the question must be 'framed with specificity and granularity.' … Our inquiry

'must be taken in light of the specific context of the case, not as a broad general proposition.'")

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *Mullenix*, 577 U.S. at 11; *Morrow*, 917

F.3d at 874-75).  See also *Joseph*, 981 F.3d at 345 (concluding the defendants were entitled to

qualified immunity because the plaintiffs failed to identify an analogous case).

4.23     To summarize, "[q]ualified immunity shields from liability all but the plainly incompetent

or those who knowingly violate the law. Accordingly, ***qualified immunity represents the norm,***

*and courts should deny a defendant immunity only in rare circumstances*." *Hinson v. Martin*, 853 Fed. Appx. 926, 930 (5th Cir. 2021) (quoting *Angulo v. Brown*, 978 F.3d 942, 948-49 (5th Cir. 2020)) (emphasis added). This case does not involve one of those rare circumstances.

4.24    Here, E.K.'s right in maintaining bodily integrity is not clearly established under the facts of this case, nor were each of the individual Defendants' actions objectively unreasonable under the circumstances they confronted. For example, there are no allegations that E.K. was sexually assaulted by any school official; rather, this is a school discipline case wherein, after being led to a calm room as prescribed by her BIP, E.K. pushed, swung at, and hit her behavior coaches which caused them to then implement a CPI Team Control Position restraint.[9] Notably, "Texas cases have long recognized the rule that public school teachers and others standing *in loco parentis* may use reasonable force to discipline their charges." *Hogenson v. Williams*, 542 S.W.2d 456, 459 (Tex. Civ. App. – Texarkana 1976, no writ) ("One standing *in loco parentis* is privileged to use reasonable force as he reasonably believes necessary for the child's proper control, training or education."). Under Texas law, "the legislature has authorized the use of force by an educator if he is entrusted with the care, supervision, or administration of the person for a special purpose, and when and to the degree the educator reasonably believes force is necessary to further the special purpose or to maintain discipline in a group." *Spacek v. Charles*, 928 S.W.2d 88, 95 (Tex. App. – Houston [14th Dist.] 1996, writ dism'd w.o.j.) (citing Texas Penal Code § 9.62).[10] "The

---

[9] See, e.g., *Moore*, 233 F.3d at 875: "We do recognize a student's liberty interest in maintaining bodily integrity. For example, we found that right to have been violated by a teacher's conduct in *Doe v. Taylor* [15 F.3d 443 (5th Cir. 1994)]. But *Taylor* is distinguishable from Aaron's case. *Taylor* involved the sexual molestation of a student by her teacher, acts unrelated to any legitimate state goal. In contrast, this case involves excessive exercise imposed as punishment to maintain discipline, and discipline is clearly a legitimate state goal."

[10] "[Penal Code] Section 9.62 is generally expressive of the common law majority rule that public school teachers standing in loco parentis may use reasonable force to discipline their charges." *Spacek*, 928, S.W.2d at 95 (citing *Hogenson*, 542 S.W.2d at 459).

'special purpose' mentioned in Section 9.62 of the Penal Code, in the case of a public school teacher, is that of controlling, training and educating the child." *Hogenson*, 542 S.W.2d at 459-60.

4.25    Critical to each individual Defendant's entitlement to qualified immunity, considering the facts each confronted, Plaintiff cannot "identify a case" in which "an officer acting under similar circumstances was held to have violated the Constitution." See *White*, 137 S.Ct. at 551-52. In other words, the alleged unlawfulness of each Defendant's conduct, considering the circumstances, is not "*beyond debate*."  See, e.g., *Vincent*, 805 F.3d at 547. Importantly, under the Supreme Court's and Fifth Circuit's approach to qualified immunity, it is not enough for Plaintiff to simply cite cases for the broad general proposition that students have a substantive due process right to bodily integrity; instead, Plaintiff must identify a case "particularized" to the facts of this specific case. See cases, *supra*. **This, Plaintiff cannot do.**  Compare *T.O.*, 2 F.4th at 415 (dismissing substantive due process claim under analogous facts). "[U]nless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity. … "[W]e must enforce the heightened requirements that the Supreme Court has set forth in its recent qualified immunity decisions." *Cope*, 3 F.4th at 204 and n. 4.

4.26    Because Plaintiff cannot meet her burden to identify a case "particularized" to the facts of this specific case, dismissal of her Section 1983 substantive due process claim against each individual Defendant is warranted based on qualified immunity. *Joseph,* 981 F.3d at 330; *Vincent*, 805 F.3d at 547.

4.27    To summarize, when analyzing whether the individual Defendants are each entitled to qualified immunity, "[w]e start by defining the circumstances with which [each Defendant] was confronted." *District of Columbia v. Wesby,* 138 S.Ct. 577, 590-91 (2018). Based on the

circumstances with which each Defendant was confronted (see facts, *supra*), each individual Defendant is entitled to qualified immunity from Plaintiff's Section 1983 claim against her or him.

## H.   Plaintiff has Failed to Allege Facts Sufficient to Support her State law Claims Against Each Defendant

4.28    Finally, as stated above, Plaintiff has brought five state common law tort claims against the Defendants: (1) battery, (2) false imprisonment, (3) gross negligence, (4) intentional infliction of emotional distress, and (5) negligence. Dkt. 1, ¶¶66-113. Assuming, *arguendo*, that these claims somehow survive dismissal notwithstanding the reasons for dismissal set forth above (irrevocable election of remedies, governmental immunity), these claims must nevertheless still be dismissed because the factual allegations in the Complaint are insufficient to state a plausible tort claim against each Defendant. Each tort claim will be briefly discussed, in turn, below.

### 1.   Battery

4.29    Plaintiff has sued Defendants Bryant and Young for battery, yet the Complaint appears to request that all Defendants be held liable under this cause of action. See Dkt. 1, ¶¶66-72.

4.30    The elements of a cause of action for battery are (1) the defendant intentionally, knowingly, or recklessly causes bodily injury to another, (2) the defendant intentionally or knowingly threatens another with imminent bodily injury, or (3) the defendant intentionally or knowingly causes physical contact with another when the person knew or reasonably believes that the other will regard the contact as offensive or provocative. *Howard v. Walmart Stores of Tex., LLC*, 2016 U.S. Dist. Lexis 105082 *19 (E.D. Tex. 2016) (citing *Moore v. City of Wylie*, 319 S.W.3d 778, 782 (Tex. App. – El Paso 2010, no pet.)). To the extent that Plaintiff is suing Defendants Bunch and Wilhelm under this cause of action, the Complaint lacks any factual allegations to state a claim for

relief against these Defendants. Dismissal of this claim pursuant to Rule 12(b)(6) is therefore proper as to these Defendants.[11]

## 2.     False imprisonment

4.31     Plaintiff has sued Defendants for false imprisonment (it is unclear if this cause of action is asserted against all Defendants or just against Defendants Bryant and Young). See Dkt. 1, ¶¶73-80.

4.32     The elements of a cause of action for false imprisonment are (1) willful detention, (2) without consent, and (3) without lawful authority. *Davila v. United States*, 713 F.3d 248, 262 (5th Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). Here, because the Complaint admits that E.F. was taken to the calm room by her school behavior coaches as part of school discipline (see Dkt. 1, ¶¶17-27) – meaning that the "detention" was with lawful authority under Texas education law – Plaintiff has failed to allege a plausible false imprisonment claim. See *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 376 (Tex. 1985) ("The plaintiff must prove the absence of authority in order to establish the third element of a false imprisonment cause of action."). Dismissal of this claim pursuant to Rule 12(b)(6) is therefore proper.

## 3.     Negligence/gross negligence

4.33     Plaintiff has sued Defendants for both negligence and gross negligence in their treatment of E.K. Dkt. 1, ¶¶81-96, 106-113.

4.34     The elements for a negligence cause of action are (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached the duty, and (3) the breach proximately caused the plaintiff's injury. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 9Tex. 2009). Gross

---

[11] Because this claim does not involve the use or operation of a motor vehicle, AISD has immunity from both liability and suit with respect to this cause of action.  See *Garcia*, 253 S.W.3d at 655-56, 660; Tex. Civ. Prac. & Rem. Code § 101.051.  So not to be overly repetitive, AISD also has immunity from all the other tort claims as well.

negligence is a higher degree of negligence, often equated with recklessness. See *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 92  (Tex. 1981). An act or omission that is merely thoughtless, careless, or not inordinarily risky does not amount to gross negligence. *Medina v. Zuniga*, 593 S.W.3d 238, 249 (Tex. 2019). Here, the Complaint lacks sufficient factual allegations to state a plausible claim for relief against each Defendant (each of whose conduct must be evaluated separately). Dismissal of these claims pursuant to Rule 12(b)(6) is proper as to each Defendant.

### 4. Intentional infliction of emotional distress

4.35    Plaintiff has sued Defendants for intentional infliction of emotional distress. Dkt. 1, ¶¶97-105.

4.36    The elements for intentional infliction of emotional distress are (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the emotional distress suffered by the plaintiff was severe, and (4) the defendant's conduct proximately caused the plaintiff's emotional distress. *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). "This Court has set a high standard for 'extreme and outrageous' conduct, holding that this element is only satisfied if the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* "Meritorious claims for intentional infliction of emotional distress are relatively rare." *Kroger Tex. Ltd P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).

4.37    According to the Texas Supreme Court, in addition to the elements a plaintiff must prove to have a viable intentional infliction of emotional distress claim, the plaintiff must further establish that no alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). This is because the tort of intentional infliction of emotional distress is a

"gap filler" tort which was created for the "limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id*. The tort of intentional infliction of emotional distress simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results. *Id*. Thus, "where the gravamen of a plaintiff's complaint is really another tort," intentional infliction of emotional distress is not available as a cause of action. *Id.*; see also *Young v. Krantz*, 434 S.W.3d 335, 344 (Tex. App. - Dallas 2014, no pet.) (dismissing intentional infliction of emotional distress claim because "the facts that form the basis of the claim for IIED are the same as those that form the basis for appellees' defamation claim."). The federal courts are in accord; as held in *Mayo v. Halliburton*, interpreting Texas law, "[t]he Court grants the Defendants' [Fed. R. Civ. P. 12(b)(6)] motion to dismiss the Plaintiff's IIED claims because her IIED claims rely only on facts alleged for her other tort claims…. Moreover, the tort of IIED was 'never intended to supplant or duplicate existing statutory or common-law remedies.' This is true even if a plaintiff's other claims are barred. In this case, the gravamen of the Plaintiff's IIED claim is identical to her claims for negligence and negligent undertaking because all her claims are based on the same alleged facts. *Under Texas law, the Plaintiff may not recover for IIED when she has other avenues of redress, regardless of her ultimate success on the alternative available claims.*" *Mayo v. Halliburton*, 2010 U.S. Dist. Lexis 113816, *13-15 (S.D. Tex. 2010) (citing cases) (emphasis added).  "Because the plaintiff has other causes of action under which she could potentially recover – even if those claims are ultimately barred [] – the plaintiff fails to state a claim for IIED." *Id*. at *15.

4.38    Here, Plaintiff's claim for intentional infliction of emotional distress should be dismissed pursuant to Rule 12(b)(6) because the same facts that form the basis of this claim also form the basis of her other tort claims. See Dkt. 1, ¶¶66-113.

## V.
## CONCLUSION AND PRAYER

5.1    For these reasons, Defendants ask the Court to dismiss all of the claims asserted by Plaintiff in Plaintiff's Complaint [Dkt. 1] with prejudice.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
**Lucas C. Henry**
State Bar No. 24101901
1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
Telephone: 214-544-4000
Facsimile: 214-544-4040
ccrawford@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on November 23, 2022, a copy of the foregoing was served on all counsel by the Court's ECF system.

*/s/Charles J. Crawford*
Charles J. Crawford