# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| NAVJA FARSHID, on behalf of her minor child E.K., § § § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:22-CV-00821 |
| v. § | Judge Mazzant |
| § | |
| ALLEN INDEPENDENT SCHOOL DISTRICT, through its Board of Trustees, et al., § § § § | |
| *Defendants.* § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Allen Independent School District, Julie Young, Terreva Bryant, and Doug Wilhelm's Second Motion to Dismiss (Dkt. #10) and Defendant Crystal Bunch's Motion to Dismiss (Dkt. #16). Having considered the motions, the responses, and the relevant pleadings, the Court finds that the motions should be **GRANTED**.

## BACKGROUND

This dispute centers around allegations of physical abuse of a minor child while at school. Plaintiff Navja Farshid, on behalf of her minor daughter, E.K., alleges that Defendants Julie Young, Terreva Bryant, Crystal Bunch, and Doug Wilhelm (collectively, the "Individual Defendants")—all of whom are employed by Defendant Allen Independent School District ("AISD")—subjected E.K. to physical abuse in October 2020 (Dkt. #5).[1]

---

[1] In her Amended Complaint, Plaintiff also named twenty "Doe Defendants," whose names and whereabouts were ostensibly unknown to Plaintiff (Dkt. #5 ¶ 8). The Court subsequently dismissed all fictitious parties, without prejudice to any party's ability to amend its pleadings to name additional parties (Dkt. #9 at p. 7). Since that time, Plaintiff has not named any additional defendants.

I.     **Factual Background**

E.K. is currently a student in AISD (Dkt. #5 ¶ 1).[2] During the 2020 school year, E.K. was enrolled in AISD's Ford Middle School (Dkt. #5 ¶ 1). Due to her displays of emotional disturbance, E.K. qualified for special education counseling and received an Individualized Education Program ("IEP") (Dkt. #10 ¶ 7). E.K.'s IEP included a behavior intervention plan, which provided her with additional teachers and behavioral coaches and placed her in AISD's Pass and Study Skill ("PASS") program (Dkt. #5 ¶ 17). In relevant part, E.K.'s behavior intervention plan provided that, should she exhibit negative behaviors in a classroom, E.K. should be asked to leave the classroom and taken to a specialized PASS classroom to calm down (Dkt. #10 at p. 8).

On October 5, 2020, E.K. was in science class when Defendant Crystal Bunch, who was E.K.'s PASS teacher, visited the classroom to observe E.K.'s behavior (Dkt. #5 ¶ 19). After observing E.K., Defendant Bunch directed E.K. to leave the science classroom and to follow her to a PASS classroom (Dkt. #5 ¶¶ 20–21). Upset about being removed from the classroom, E.K. refused to follow Defendant Bunch, stating that she wished to speak with an assistant principal instead (Dkt. #5 ¶ 23). At this point, Defendants Julie Young and Terreva Bryant, both of whom were behavioral coaches, intervened and physically prevented E.K. from going to the assistant principal's office (Dkt. #5 ¶ 23). Defendants Young and Bryant then grabbed E.K. by the arms, lifted her up in the air, and began carrying her to the PASS classroom (Dkt. #5 ¶ 24). As Defendants Young and Bryant carried her—and to no avail—E.K. repeatedly expressed that she was in pain and asked to be put down (Dkt. #5 ¶ 25).

---

[2] As it must at the motion to dismiss stage, the Court accepts Plaintiff's allegations as true. *See, e.g., Norsworthy v. Hou. Indep. Sch. Dist.*, 70 F. 4th 332, 336 (5th Cir. 2023) ("We accept as true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff.").

Upon reaching the PASS classroom, E.K. attempted to call her mother, but Defendants Young and Bryant forcibly took E.K.'s phone away from her (Dkt. #5 ¶ 27).  When E.K. attempted to retrieve her phone, Defendants Young and Bryant wrestled E.K. to the ground and kept her pinned to the floor by placing their knees in E.K.'s back (Dkt. #5 ¶ 30).  After E.K. made another attempt to call her mother, Defendants Young and Bryant pushed E.K. against a wall, and then pinned her face-down to the floor, which made it difficult for E.K. to breathe (Dkt. #5 ¶¶ 34–37). This distress caused E.K., who was wearing a mask due to the COVID-19 pandemic, to vomit into her mask (Dkt. #5 ¶ 39).

At this point, the Defendant Doug Wilhelm, the principal of Ford Middle School, entered the room and told E.K. that she would be allowed to call her mother after she calmed down (Dkt. #5 ¶¶ 40–44).  Ultimately, Defendants attempts to physically restrain E.K. caused her to suffer hemorrhages, scratches, bruises, and pain to both her chest and back (Dkt. #5 ¶ 47).

## II.     Procedural History

And so, on September 23, 2022, Plaintiff filed suit against AISD and the Individual Defendants in both their official and individual capacities (Dkt. #1).  Roughly two months later, Plaintiff filed her amended complaint (Dkt. #5).  In her amended complaint, Plaintiff asserts six causes of action on E.K's behalf (Dkt. #5 ¶¶ 54–128).  In Count One of her amended complaint, Plaintiff alleges a violation of due process under 42 U.S.C. § 1983 while Counts Two through Six allege tort causes of action for battery, false imprisonment, gross negligence, intentional infliction of emotional distress, and negligence.

In response, Defendants AISD, Young, Bryant, and Wilhelm moved to dismiss Plaintiff's complaint on December 30, 2022 (Dkt. #10).  Plaintiff filed her response on January 13, 2023 (Dkt. #12), and Defendants AISD, Young, Bryant, and Wilhelm replied six days later (Dkt. #13).

Defendant Bunch filed her own motion to dismiss on February 6, 2023 (Dkt. #16).[3] Plaintiff filed her response on February 17, 2023 (Dkt. #17), and Defendant Bunch replied on February 23, 2023 (Dkt. #18).

## LEGAL STANDARD

### I.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject-matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. FED. R. CIV. P. 12(b)(1); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (cleaned up). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1), the party invoking jurisdiction "bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

---

[3] Defendant Bunch's motion to dismiss is substantively identical to the motion to dismiss filed by AISD and the other Individual Defendants.

The Court will grant a motion to dismiss for lack of subject-matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

## II.    Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants argue that Plaintiff's state law claims must be dismissed for lack of subject-matter jurisdiction as they are barred by Texas law. Likewise, Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's § 1983 claim, and that, in any event, Plaintiff has failed to state a claim for the violation of E.K.'s constitutional rights. The Court will address each of Defendants' arguments in turn.

### I.  Plaintiff's State Law Claims

Counts Two through Six of Plaintiff's Amended Complaint assert state law claims against Defendants, including AISD and the Individual Defendants in both their official and individual capacities (Dkt. #5 ¶¶ 66–128). Defendants contend that these claims must be dismissed for two reasons. First, Defendants argue that Plaintiff's state law claims against the Individual Defendants

in their individual capacities must be dismissed under the Texas Tort Claims Act's ("TTCA") election of remedies provision (Dkt. #10 at p. 5). Second, Defendants argue that Plaintiff's state law claims against AISD and the Individual Defendants are barred under the doctrine of governmental immunity (Dkt. #10 at p. 6).

Notably, Plaintiff concedes that her state law claims must be dismissed under Texas law, arguing only that governmental immunity does not bar her § 1983 claim (Dkt. #12 at p. 9). The Court agrees, and, as a result, it will dismiss Plaintiff's state law claims against AISD and the Individual Defendants, in both their official and individual capacities.

### A. Plaintiff's State Law Claims Against AISD and the Individual Defendants in Their Official Capacities are Barred by the Doctrine of Governmental Immunity

The Court turns first to the issue of immunity. Under Texas law, the doctrine of sovereign immunity protects the State from lawsuits and liability for monetary damages. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). Likewise, the State's political subdivisions, including municipalities and school districts, are protected by the doctrine of governmental immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Both doctrines are born of the long-standing principle that "no State can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Id.* at 655 (quoting *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)).

Texas has provided limited consent to suit through the TTCA, which provides a waiver of immunity for certain suits against governmental entities. TEX. CIV. PRAC. & REM. CODE ANN. § 101.023.[4] As it relates to school districts, the TTCA's waiver provision is particularly limited: a

---

[4] Although Plaintiff's amended complaint makes no mention of the TTCA, the TTCA is "the only, albeit limited, avenue for common-law recovery against the government, [and] all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed" to be under the TTCA. *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659.

7

school district's waiver of governmental immunity encompasses only tort claims involving the use or operation of motor vehicles. *Id.* § 101.051; *see also LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 88 n.4 (Tex. 2011) ("School districts as a practical matter are almost entirely immune—the Tort Claims Act excludes them from its waiver except as to motor vehicles.") (Guzman, J., dissenting) (cleaned up).

None of Plaintiff's state claims against AISD involve the use or operation of motor vehicles (Dkt. #5). Consequently, AISD retains its governmental immunity and Plaintiff's claims must be dismissed. *See, e.g.*, *Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 115 (Tex. App.—Dallas 2012, no pet.) (noting that claim against governmental entity that does not fall within waiver of immunity must be dismissed for lack of jurisdiction). The same is true for Plaintiff's claims against the Individual Defendants in their official capacities, as "an employee sued in his official capacity has the same governmental immunity, derivatively, as his governmental employer." *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011).[5]

### B. Plaintiff's State Law Claims Against the Individual Defendants in Their Individual Capacities are Barred by the TTCA's Election of Remedies Provision

The TTCA also provides that "[t]he filing of a suit . . . against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a). In effect, this provision "forces a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental

---

[5] Although a dismissal on jurisdictional grounds ordinarily functions as a dismissal without prejudice, when there is a lack of subject-matter jurisdiction due to governmental immunity, dismissal with prejudice is proper. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639–40 (Tex. 2004).

8

unit is vicariously liable." *Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019). If a plaintiff declines to make this election and sues both a governmental unit and its employees, the consequence is that "the employees shall immediately be dismissed" on the employer's motion. TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e); *see also Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 532 (Tex. 2017).

Plaintiff attempted to sidestep § 101.106's mandatory election by naming both AISD and the Individual Defendants here. This "apparent nonchoice" functions as a decision to sue only AISD. *Rios*, 542 S.W.3d at 537.[6] So, following AISD's motion, Plaintiff's state law claims against the Individual Defendants in their individual capacities must be dismissed. *Id.*

## II. Plaintiff's § 1983 Claim

Defendants also raise two challenges to Plaintiff's § 1983 claim (Dkt. #10 at p. 10; Dkt. #16 at p. 6). As a threshold matter, Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's § 1983 because Plaintiff failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act ("IDEA") (Dkt. #10 at p. 13). Alternatively, Defendants argue that, even if the Court has jurisdiction over Plaintiff's § 1983 claim, the claim must be dismissed because Plaintiff has failed to state claim on which relief can be granted (Dkt. #10 at p. 14). Although the Court finds that it has subject-matter jurisdiction over Plaintiff's claim, it must nonetheless dismiss this case for failure to state a claim as a matter of well-established Fifth Circuit precedent.

### A. The Court Has Subject-Matter Jurisdiction Over Plaintiff's § 1983 Claim

Defendants' initial challenge to Plaintiff's § 1983 claim centers on the IDEA's exhaustion requirement. The IDEA provides federal funds to the states in exchange for a commitment to

---

[6] It is also worth noting that § 101.106(f) effectively "foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka*, 332 S.W.3d at 382.

furnish a "free appropriate public education"—known as a FAPE—to children with physical and intellectual disabilities. *See* 20 U.S.C. § 1412(a)(1)(A); *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017). As a part of its statutory scheme, the IDEA requires that "before the filing of a civil action under [federal law] seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(l). The Supreme Court has offered two notable clarifications to the scope of the IDEA's exhaustion requirement.

First, the IDEA's exhaustion requirement applies only when the "gravamen of a complaint seeks redress for a school's failure to provide a FAPE . . . ." *Fry*, 580 U.S. at 170. Second, the IDEA's exhaustion requirement applies "*only* to suits that seek relief also available under the IDEA." *Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 864 (2023) (cleaned up) (emphasis in original). That is, the IDEA's exhaustion requirement does not apply when a plaintiff brings a suit under another federal law for compensatory damages—a form of relief "everyone agrees" that the IDEA does not provide. *Id.*; *see also Chavez v. Brownsville Indep. Sch. Dist.*, No. 22-40085, 2023 WL 3918987, at *2 (5th Cir. June 9, 2023).

Applying these principles here, the Court concludes that Plaintiff's § 1983 claim is not subject to the IDEA's exhaustion requirement. To begin, Plaintiff's claim for monetary damages is not subject to the IDEA's exhaustion requirement as it is undisputed that damages are unavailable under the IDEA. *Luna Perez*, 143 S. Ct. at 864. Of course, the same is not necessarily true for Plaintiff's request for equitable relief. *See id.* at 865 (explaining that "a plaintiff who files an ADA action seeking both damages and the sort of equitable relief the IDEA provides may find [her] request for equitable relief barred or deferred" if she has yet to comply with the IDEA's exhaustion requirement).

10

But, in any event, Plaintiff's entire § 1983 claim is not subject to the IDEA's exhaustion requirement as the gravamen of her complaint is not about the denial of a FAPE.  *See Fry*, 580 U.S. at 158.  In conducting the gravamen analysis, the Court looks to the substance of the plaintiff's complaint as a whole, rather than to "particular labels and terms."  *Doe v. Dall. Indep. Sch. Dist.*, 941 F.3d 224, 227 (5th Cir. 2019).  To guide this analysis, the Supreme Court has suggested two hypothetical questions: (1) "[C]ould the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" and (2) "[C]ould an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?"  *Fry*, 580 U.S. at 171.  The Fifth Circuit has also employed an additional hypothetical: "Could a student without disabilities bring this claim?"  *Doe*, 941 F.3d at 229.  "If the answers are yes, then the claim is not likely about a FAPE since those hypotheticals take a claim away from the core purpose of the IDEA."  *Id.*

The substance of Plaintiff's complaint overwhelmingly focuses on the physical abuse suffered by E.K., including allegations that she was "wrestled to the ground," pushed against a wall, and pinned "face-down to the ground with her arms pulled back" (Dkt. #5 ¶¶ 23–36).  According to the complaint, E.K. suffered physical and mental trauma, which resulted directly from "physical abuse" (Dkt. #5 ¶ 47).  At no point does the complaint allege that Defendants failed to accommodate E.K.'s disability; nor does it allege that Defendants failed to provide E.K. with an appropriate educational environment.

Nonetheless, Defendants contend that the gravamen of Plaintiff's complaint is that Defendants "misapplied and violated" E.K.'s IEP by taking her to the calm room and physically restraining her (Dkt. #10 at p. 13).  To be sure, the IDEA is potentially implicated based on Plaintiff's allegations because the alleged abuse occurred while Plaintiffs were attempting to direct

E.K. to a "calm room" pursuant to her IEP. But the potential implication of the IDEA is not enough—the Court must focus on whether the core of Plaintiff's claim is the denial of a FAPE. *Doe*, 941 F.3d at 228 ("[T]he Supreme Court's analysis shows that the emphasis is not on whether a FAPE is potentially implicated; it is on whether the 'gravamen' or 'essentials' of the complaint concern the denial of a FAPE."). And here, the gravamen of Plaintiff's complaint concerns alleged physical abuse rather than the denial of a FAPE.

After all, E.K. could have brought essentially the same claim if she was allegedly subjected to physical abuse by employees at a public facility other than a school. *Fry*, 580 U.S. at 158. Likewise, an adult at the school who was wrestled to the ground, shoved against a wall, or pinned face-down to the ground could "press[] essentially the same grievance." *Id.* Were all traces of E.K.'s disability removed, her claim would look nearly identical to what exists now: allegations that Defendants violated E.K.'s right of bodily integrity by subjecting her to physical abuse. *See Doe*, 941 F.3d at 228. Thus, the Court concludes that the gravamen of Plaintiff's § 1983 claim is not about the denial of a FAPE and that the IDEA's exhaustion requirement does not apply. *See id.*

**B.   Plaintiff Fails to State a Claim for Violation of E.K.'s Due Process Rights Under § 1983**

Defendants also challenge Plaintiff's ability to state a claim upon which relief can be granted under § 1983. To state a § 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See, e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). According to Plaintiff, Defendants violated E.K.'s liberty interest in her bodily integrity, which is secured by the Due Process Clause contained in the Fifth and Fourteenth Amendments (Dkt. #5 ¶¶ 54–65).

Plaintiff is correct that, in the context of public schools, corporal punishment implicates a constitutionally protected liberty interest under the Fourteenth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977). That said, so long as the state provides adequate civil or criminal remedies, "a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 414 (5th Cir. 2021) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). Of course, substantive due process claims can go forward when the complained-of conduct is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990).[7] But disciplinary acts—even those that are "ill-advised," "inappropriate," or "abusive"—do not give rise to a substantive due process claim if they are undertaken for a disciplinary or pedagogical reason. *T.O.*, 2 F.4th at 414; *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 510–11 (5th Cir. 2004) (per curiam).

Indeed, the Fifth Circuit has uniformly affirmed the dismissal of corporal punishment claims "when the offending conduct occurred in a disciplinary, pedagogical setting." *T.O.*, 2 F.4th at 414; *Moore*, 233 F.3d at 875 (concluding that student could not state due process claim when a teacher forced student to perform excessive physical exercise as a punishment for talking during roll call); *Marquez v. Garnett*, 567 F. App'x 214, 217–18 (5th Cir. 2014) (concluding that disabled

---

[7] For example, the Fifth Circuit has allowed a substantive due process claims to go forward when a teacher allegedly molested a student, and when a teacher tied a student to a chair for two days as part of an experiment. *T.O.*, 2 F.4th at 414 (collecting cases); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) (en banc); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305–06 (5th Cir. 1987). These claims were allowed "to proceed because, unlike disciplinary measures, these alleged acts were 'unrelated to any legitimate state goal.'" *T.O.*, 2 F.4th at 414 (quoting *Moore*, 233 F.3d at 875).

13

student could not state due process claim when a teacher's aide allegedly grabbed, shoved, and kicked student for sliding compact disc across a table during class time).[8]

Ultimately, so long as the conduct at issue can be properly characterized as corporal punishment, a public school student cannot state a claim for violation of substantive due process if the state provides an adequate remedy. *Flores*, 116 F. App'x at 511. In *Flores*, a special education student allegedly skipped detention and "questioned" a teacher's order directing the student to eat lunch in a detention room. *Id.* at 506. In response, the teacher threatened the student, then proceeded to throw the student up against a wall and to strangle him. *Id.* Through his parents, the student filed suit against the school district and the relevant individuals, asserting a host of statutory and constitutional claims, including a § 1983 claim alleging that the teacher had maliciously violated the student's due process rights for the sole purpose of causing him harm. *Id.* at 507. The district court dismissed the student's § 1983 claim, concluding that the student could not state a claim for violations of his substantive due process rights. *Id.* On appeal, the Fifth Circuit affirmed the dismissal. *Id.* at 512. According to the Fifth Circuit, acts which can be fairly characterized as corporal punishment—that is, acts intended to "discipline the student for the

---

[8] On this point, the Fifth Circuit is "isolated," as it is the only circuit that has not recognized that corporal punishment-related injuries can give rise to constitutional claims regardless of the availability of state remedies. *T.O.*, 2 F.4th at 419 (Wiener, J., specially concurring). In fact, every other circuit to consider the issue has recognized that excessive corporal punishment can violate substantive due process rights (or Fourth Amendment rights)—irrespective of the alternative remedies available. *Compare Votta ex rel. R.V. & J.V. v. Castellani*, 600 F. App'x 16, 18 (2d Cir. 2015) (recognizing that excessive corporal punishment violates substantive due process); *Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988) (same); *Meeker v. Edmundson*, 415 F.3d 317, 322 (4th Cir. 2005) (same); *Nolan v. Memphis City Sch.*, 589 F.3d 257 (6th Cir. 2009) (same); *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 564 (8th Cir. 1988) (same); *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 782 (10th Cir. 2013) (same); *Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (same), *with Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1016 (7th Cir. 1995) (recognizing that excessive corporal punishment violates the Fourth Amendment); *Preschooler II v. Clark Cnty. Sch. Bd. of Tr.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (same). Neither the Supreme Court nor the en banc Fifth Circuit have remedied this "lopsided circuit split." *See T.O.*, 2 F.4th at 420 (Wiener, J., specially concurring). And so, the Court is bound to follow the existing law in the Fifth Circuit and to hold that Plaintiff cannot state a claim for substantive due process through excessive corporal punishment. *See id.*; *La Union del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 504, 553 (W.D. Tex. 2022) (noting that a district court "is bound by a circuit decision unless or until it is overturned by an en banc decision of the circuit court or a decision of the Supreme Court.").

purpose of maintaining order and respect"—cannot give rise to a substantive due process violation if the state provides an adequate remedy for excessive conduct. *Id.* at 510–11. And, while "inappropriate" and "abusive," the teacher's acts were "meant to punish [the student]" for skipping detention and "did not constitute a random, malicious, or unprovoked attack." *Id.* at 511. The Fifth Circuit thus concluded that, if the student was entitled to a remedy, that remedy must be found under state law rather than under the Due Process Clause. *Id.*

Based on the foregoing, well-established Fifth Circuit precedent forecloses Plaintiff's § 1983 claim here. After all, Plaintiff's acknowledges that Defendant Bunch initially removed E.K. from the classroom as part of the PASS program, and that Defendants Young and Bryant only grabbed and restrained E.K. after E.K. refused to follow directions (Dkt. #5 ¶¶ 18–39). So, even if Defendants' efforts to physically control E.K. were ill-advised, the Court cannot say that they did not serve a disciplinary or pedagogical purpose. *T.O.*, 2 F.4th at 415. Simply put, the facts as alleged by Plaintiff do not suggest that E.K. was the subject of a "random, malicious, or unprovoked attack." *Flores*, 116 F. App'x at 511. And, as the Fifth Circuit has repeatedly held, "Texas law provides adequate, alternative remedies in the form of both criminal and civil liability for school employees whose use of excessive disciplinary force results in injury to students in [E.K.'s] situation." *T.O.*, 2 F.4th at 415.[9]

For these reasons, Plaintiff cannot state a claim for violation of her rights under the Due Process Clause.

---

[9] Texas law specifically forbids unjustified or excessive corporal punishment. *See* TEX. PENAL CODE ANN. § 9.62; *see also Moore*, 233 F.3d at 875 ("Texas law forbids excessive corporal punishment.").

## CONCLUSION

It is therefore **ORDERED** that Defendants Allen Independent School District, Julie Young, Terreva Bryant, and Doug Wilhelm's Second Motion to Dismiss (Dkt. #10) is hereby **GRANTED**.

It is further **ORDERED** Defendant Crystal Bunch's Motion to Dismiss (Dkt. #16) is hereby **GRANTED**.

The case is hereby **DISMISSED WITH PREJUDICE**.

The Court will render a Final Judgment consistent with this Memorandum Opinion and Order separately.

All relief not previously granted is hereby **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 18th day of August, 2023.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE